No. 23-3936

In the United States Court of Appeals for the Sixth Circuit

LEAH PRIDA,

*Plaintiff-Appellant,*

v.

OPTION CARE ENTERPRISES, INC., *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
For the Northern District of Ohio
(5:23-cv-00905)

**BRIEF OF DEFENDANTS – APPELLEES
OPTION CARE ENTERPRISES, INC. AND CLINICAL SPECIALITIES, INC.**

Jeffrey B. Keiper (0063133)
Julia L. Denmeade (0101159)
JACKSON LEWIS P.C.
6100 Oak Tree Boulevard
Suite 400
Cleveland, OH  44131
Ph:    (216) 750-0404
Fax:  (216) 750-0826
Jeffrey.Keiper@jacksonlewis.com
Julia.Denmeade@jacksonlewis.com

*Attorneys for Defendants-Appellees*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

CORPORATE DISCLOSURE STATEMENT ................................. viii

STATEMENT REGARDING ORAL ARGUMENT ............................ ix

STATEMENT OF JURISDICTION.................................................... x

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........... xi

I.    STATEMENT OF THE CASE ...................................................1

    A.    Pertinent Facts Alleged in Prida's Amended Complaint. .........................................................1

    B.    The District Court Dismisses Prida's Amended Complaint. .........................................................8

II.   SUMMARY OF ARGUMENT ...................................................9

III.  ARGUMENT...........................................................................14

    A.    Standard of Review. ...................................................14

    B.    The District Court Properly Dismissed Prida's Religious Discrimination/Failure to Accommodate Claims...................................................................17

        1.    Religious Discrimination Claims Under Title VII. ...................................................................17

        2.    Prida's Alleged Objections to Covid Testing are Based on Secular Factors, Not Religious Factors...................................................................19

        3.    Federal Courts Have Generally Dismissed The Claims Prida Advances Based On Similar Factual Allegations...........................................24

4. There is a Compelling Legal Basis to Affirm the District Court's Dismissal of Prida's Amended Complaint. .......................................31

5. Recent Circuit Court Decisions Reversing District Court Dismissals Are Distinguishable From The Present Case. .................................34

C. Prida's Amended Complaint Fails To Plausibly Plead An Actionable Retaliation Claim. .............................................38

1. Prida Does Not Plausibly Allege She Engaged In Protected Activity Under Title VII. .......................................................39

2. Prida Does Not Plausibly Allege A Causal Connection Between Protected Activity And Her Termination. ........................................41

3. Prida Failed to Exhaust Administrative Remedies As To Her Retaliation Claim. .................................43

D. The District Court Properly Dismissed Count III Of Prida's Amended Complaint. .............................................45

IV. CONCLUSION.........................................................................46

CERTIFICATE OF COMPLIANCE....................................................47

CERTIFICATE OF SERVICE .........................................................48

APPELLEE'S ADDENDUM ..........................................................49

DESIGNATION OF THE RECORD ....................................................49

ii

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Crown Motor Co.*,
348 F.3d 537 (6th Cir. 2003) .............................................................17

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys.*,
988 F.2d 1157 (Fed. Cir. 1993) ..........................................................16

*Africa v. Com. of Pa*,
662 F.2d 1025 (3rd Cir. 1981) .......................................................11, 25, 27, 32

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................14, 15, 24

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
528 F.3d 426 (6th Cir. 2008) .............................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................15, 24

*Benzaoual v. Ohiohealth Corp.*,
No. 2:19-cv-3366, 2021 U.S. Dist. LEXIS 123015 (S.D. Ohio
July 1, 2021)..................................................................................44

*Blackwell v. Lehigh Valley Health Network*,
No. 5:22-cv-03360, 2023 U.S. Dist. LEXIS 10747 (E.D. Pa.
Jan. 23, 2023)....................................................................28, 29, 31

*Booker v. Brown & Williamson Tobacco Co.*,
879 F.2d 1304 (6th Cir. 1989) ..................................................38, 40

*Briggs v. Univ. of Detroit-Mercy*,
611 F.App'x 865 (6th Cir. 2015) ......................................................38

*Clark County School Dist. v. Breeden*,
532 U.S. 268 (2001)........................................................................42

*Clark v. Jackson*,
No. 22-5553, 2023 WL 2787325 (6th Cir. Apr. 5, 2023)...................16

*Devore v. Univ. of KY Bd. of Trs.*,
  No. 5:22-cv-00186, 2023 U.S. Dist. LEXIS 167239 (E.D. Ky,
  Sept. 20, 2023) ............................................................................*passim*

*Egelkrout v. Aspirus, Inc.*,
  No. 22-cv-118-bbc, 2022 U.S. Dist. LEXIS 128519 (W.D. Wisc.
  July 20, 2022)................................................................................29

*Fallon v. Mercy Catholic Medical Center of Southeastern
  Pennsylvania*,
  877 F. 3d 487 (3rd Cir. 2017) ....................................................*passim*

*Finkbeiner v. Geisinger Clinic*,
  623 F.Supp.3d 458, 2022 U.S. Dist. LEXIS 154512 (M.D. Pa.
  2022), appeal dismissed No. 22-2714, 2023 WL 6057495 (3rd Cir.
  Sept. 18, 2023) ................................................................27, 28, 29, 31

*Gatto v. Johnson & Johnson Servs., Inc.*,
  Civil Action No. 2:23-cv-1607, 2024 U.S. Dist. LEXIS 77792
  (W.D. Pa., Apr. 29, 2024).............................................................30, 31

*Geerlings v. Tredyffrin/Easttown Sch. Dist.*,
  No. 21-4024, 2021 U.S. Dist. LEXIS 183966 (E.D. Pa. Sept. 27,
  2021) .............................................................................................27, 31

*Granderson v. Univ. of Mich.*,
  211 Fed. Appx. 398 (6th Cir. 2006)..................................................43

*Hall v. Baptist Mem'l Health Care Corp.*,
  215 F.3d 618 (6th Cir. 2000) .....................................................19, 33

*Haydar v. Amazon Corp.*,
  LLC, No. 19-2410, 2021 U.S. App. LEXIS 28182 (6th Cir. 2021) ..................42

*Henry v. Abbott Labs*,
  651 F.App'x 494 (6th Cir. 2016) ......................................................38

*Holden v. Owens-Illinois, Inc.*,
  793 F.2d 745 (6th Cir. 1986) ...........................................................39

*Hunter v. Sec'y of United States Army*,
  565 F.3d 986 (6th Cir. 2009) ...........................................................43

iv

*Inman v. Edwin Shaw Rehab, LLC*,
No. 5:13CV1269, 2013 U.S. Dist. LEXIS 160153 (N.D. Ohio
Nov. 8, 2013) ................................................................................. 15

*Keys v. Humana, Inc.*,
684 F.3d 605 (6th Cir. 2012) ............................................... 19, 26, 33

*Lawhead v. Brookwood Mgmt. Co.*,
LLC, No. 5:22-CV-00886-JRA, 2023 U.S. LEXIS 54355 (N.D.
Ohio, Mar. 29, 2023) ................................................................. 26, 33

*Lockett v. Potter*,
259 Fed. Appx. 784 (6th Cir. 2008) .............................................. 43

*Lucky v. Landmark Med. Of Mich., P.C.*,
No. 23-2030, 2024 U.S. App. LEXIS 14257 (6th Cir. June 12,
2024) ............................................................................... 34, 35, 36

*Macon v. J.C. Penney Co.*,
17 F. Supp. 3d 695 (N.D. Ohio Apr. 23 2014), *aff'd at* No. 14-3454
(6th Cir. 2014) ............................................................................. 19

*McKinley v. Princeton Univ.*,
D.N.J. Civil Action No. 22-5069 (MAS) (TJB), 2023 U.S. Dist.
LEXIS 215345 (Dec. 1, 2023) ................................................. 30, 31

*Niswander v. Cincinnati Ins. Co.*,
529 F.3d 714 (6th Cir. 2008) ....................................................... 38

*Nwanguma v. Trump*,
903 F.3d 604 (6th Cir. 2018) ....................................................... 15

*Pedreira v. Kentucky Baptist Homes for Child, Inc.*,
579 F.3d 722 (6th Cir. 2009) ................................................. 18, 26, 33

*Plumbers & Steamfitters Joint Apprenticeship Comm v. Ohio Civ. Rts.
Comm'n*,
66 Ohio St.2d 192,196 (1981) ....................................................... 18

*Ringhofer v. Mayo Clinic, Ambulence*,
No. 23-2994, 2024 U.S. App. LEXIS 12522 (8th Cir. May 24,
2024) ................................................................................. 36, 37

v

*Robertson v. McKesson Corp.*,
No. 2:23-cv-2334, 2023 U.S. Dist. LEXIS 141159 (S.D. Ohio
August 11, 2023)....................................................................................33

*Sanders v. Freeman*,
221 F.3d 846 (6th Cir. 2000) ...............................................................14

*Scheid v. Fanny Farmer Candy Shops, Inc*.,
859 F.2d 434 (6th Cir. 1988) ...............................................................15

*Stanley v. Express Jet Airlines, Inc.*,
808 F.App'x 351 (6th Cir. 2020) ...............................................39, 40, 41

*Stringfield v. Graham*,
212 F.App'x 530 (6th Cir. 2007) ..........................................................16

*Sturgill v. Am. Red Cross*,
E.D. Mich. No. 22-cv-11837, 2023 U.S. Dist. LEXIS 224036 (Dec.
15, 2023) ........................................................................29, 30, 31

*Taylor v. Geithner*,
703 F. 3d 328 (6th Cir. 2013) ..............................................................38

*Tepper v. Potter*,
505 F.3d 508 (6th Cir. 2007) ........................................................18, 19

*Thompson v. Sec'y of the VA*,
No. 1:18cv1777, 2019 U.S. Dist. LEXIS 208994 (N.D. Ohio June
10, 2019) ............................................................................................44

*U.S. v. Seeger*,
380 U.S. 163 (1965)..................................................10, 11, 25, 28

*Ulrich v. Lancaster Gen. Health*,
Civ. A No. 22-4945, 2023 U.S. Dist. LEXIS 64750 (E.D. Pa.,
April 13, 2023)..................................................................26, 27, 31

*Wasek v. Arrow Energy Servs*, *Inc.*,
682 F. 3d 463 (6th Cir. 2012) ..............................................................38

*Welsh v. U.S.*,
398 U.S. 333 (1970)........................................................10, 11, 25

*Wisconsin v. Yoder*,
406 U.S. 205 (1972) ................................................................12, 27, 32

*Yeager v. FirstEnergy Generation Corp*.,
777 F.3d 362 (6th Cir. 2015) .................................................17, 18, 19

*Younis v. Pinnacle Airlines, Inc.*,
610 F.3d 359 (6th Cir. 2010) ...............................................................44

**Statutes**

42 U.S.C. § 2000e(i) ................................................................................17

42 U.S.C. § 2000e-2(a)(1).......................................................................17

42 U.S.C. Sec. 2000e-3(a) ......................................................................38

42 U.S.C. §§ 2000e-5(e)-(f)....................................................................43

Civil Rights Act of 1964 Title VII....................................................*passim*

Health Insurance Portability and Accountability Act...............................39

Military Training and Service Act, 50 U.S.C.S. § 456(j) .......................10

Ohio Rev. Code § 4112.02................................................................*passim*

**Rules**

Cir. R. 28(b)(1)(A)(i) ........................................................................47, 49

Civil Rule 12(b)(6)...........................................................................*passim*

Fed. R. App. P. 32(g) ..............................................................................47

## CORPORATE DISCLOSURE STATEMENT

Pursuant to 6th Cir. R. 26.1, Option Care Enterprises, Inc. and Clinical Specialties, Inc., make these disclosures:

1. Are said parties a subsidiary or affiliate of a publicly owned corporation? If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

Option Care Enterprises, Inc. and Clinical Specialties, Inc. are indirect, wholly-owned subsidiaries of Option Care Health, Inc., a publicly traded corporation. Option Care Health, Inc. is the ultimate parent of Option Care Enterprises, Inc. and Clinical Specialties, Inc.

2. Is there a publicly-owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest.

No.

## STATEMENT REGARDING ORAL ARGUMENT

Although Defendants-Appellees Option Care Enterprises, Inc. and Clinical Specialties, Inc. (together, "Option Care") believe the District Court correctly analyzed the alleged facts, the applicable law and the dispositive issues in dismissing Plaintiff-Appellant's Amended Complaint, Option Care respectfully requests the opportunity to present oral argument, which may be of benefit in the decisional process.

## STATEMENT OF JURISDICTION

This case was properly before the U.S. District Court for the Northern District of Ohio pursuant to the District Court's federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The District Court granted Option Care's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Civil Rule 12(b)(6) on October 24, 2023. Plaintiff-Appellant Leah Prida timely filed notice of appeal on November 20, 2023. Thus, this appeal is properly before the U.S. Court of Appeals for the Sixth Circuit pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The issues presented in this appeal can be succinctly stated as follows:

1.    Did the District Court properly dismiss Counts I and III of Plaintiff-Appellant's Amended Complaint pursuant to Civil Rule 12(b)(6) because she failed to plausibly plead an actionable claim of religious discrimination/failure to accommodate under Title VII and O.R.C. § 4112.02?

2.    Did the District Court properly dismiss Count II of Plaintiff-Appellant's Amended Complaint pursuant to Civil Rule 12(b)(6) because she failed to plausibly plead an actionable claim of retaliation under Title VII?

## I.    STATEMENT OF THE CASE

### A.    Pertinent Facts Alleged in Prida's Amended Complaint.

Plaintiff-Appellant Leah Prida's ("Prida" or "Appellant") Amended Complaint and the documents incorporated therein by reference make the factual allegations set forth below. Defendants-Appellees Option Care Enterprises, Inc. and Clinical Specialties, Inc. (collectively, "Appellees" or "Option Care") accept such factual allegations as true solely for purposes of their Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Civil Rule 12(b)(6) and this appeal. Option Care does not accept as true or accurate any of Prida's legal allegations or conclusions.

Prida was employed by Option Care, a healthcare network, as a Network Cash Applications Specialist, averaging about five (5) days per month working on-site at the Hudson, Ohio location. (Am. Compl., RE 10, Page ID # 92-93, ¶¶ 8-10, 15). In August 2021, Option Care implemented a Covid-19 Vaccination Policy requiring that all employees whose jobs required on-site work be fully vaccinated against Covid-19, subject to potential exemption as an accommodation for medical conditions or sincerely held religious beliefs. (*Id.*, RE 10, Page ID # 94-96, ¶¶ 20-22, 28). As a condition of receiving a medical or religious exemption from mandatory vaccination, unvaccinated employees were required to submit to a weekly Covid-19 test. (*Id.*, Page ID # 96, 99-100, ¶¶ 28, 43-44).

On or about August 17, 2021, Option Care's CEO sent e-mail instructions to employees explaining how they could apply for a medical or religious exemption from the Covid-19 vaccination requirement. (*Id.*, Page ID # 94, 98, ¶¶ 19, 38). Option Care allegedly did not provide a method to request exemption from the weekly testing requirement. (*Id.*, Page ID # 96-98, ¶¶ 30-31, 38-39). On November 17, 2021, Option Care announced that all employees were required to be fully vaccinated against Covid-19 or have an approved medical or religious exemption by January 4, 2022. (*Id.*, Page ID # 94-96, ¶¶ 21, 26, 28). Such deadline was later extended to February 28, 2022. (*Id.*, Page ID # 96, ¶ 28).

On December 28, 2021, Prida allegedly requested an exemption from the Covid-19 vaccination requirement and the weekly testing requirement as an accommodation of her alleged sincerely held religious beliefs. (*Id.*, Page ID#99-100, ¶¶ 43-44). According to the Amended Complaint:

> In her request, Plaintiff stated that as Christians our bodies belong to God, and we are 'accountable to our creator by the way we care for, maintain and protect our bodies.' Partaking in vaccines that use 'abortion-derived fetal cell lines' offends her and her religious faith. In addition, she could not subject herself to the testing because Ethylene Oxide, a known carcinogen, is used on the cotton swab in the PCR tests. 'Vaccines and/or testing violate his requirements set forth for us in the Bible.' Plaintiff quoted 1 Corinthians 6:19-20 that our bodies are the temple of God. Plaintiff could not alter her 'God given body' or risk the potential harm either from the vaccine or the 'chemicals used in the testing.' Plaintiff reiterated her religious belief prevents her from putting a known human carcinogen like Ethylene Oxide, in her body

stating: "This all relates to what I believe in, how I should care for and what I should do with my temple of God."

(*Id.*, Page ID # 98-99, ¶ 40; *see also* Exhibit 1 attached to Option Care's Motion to Dismiss Am. Compl., RE 12-1, Page ID # 139-142 for Prida's full request for a religious exemption from Option Care's Covid policy). Regarding Prida's objection specifically to Covid testing, Prida pointed out that the "United States EPA has shown since 2016 Ethylene Oxide (EO) which is used in these PCR tests on the cotton swab is a known human carcinogen" and she could not "in good conscience alter my God given body and will not risk the harm that may come from both the vaccines or the chemicals in the testing." (Exhibit 1 attached to Option Care's Motion to Dismiss Am. Compl., RE 12-1, Page ID # 142).

On February 17 and 22, 2022, Option Care allegedly approved Prida's request for a religious accommodation/exemption from the vaccine mandate and informed Prida that, as a condition of such exemption, she would be "required to undergo weekly [Covid] testing." (Am. Compl., RE 10, Page ID # 99, 104, ¶¶ 42-43, 69). On February 23 and 25, 2022, Prida sent emails to Option Care Executive Assistant Hagglund (*sic*) and Human Resources Director Jeannie Coe containing links to NIH and CDC websites regarding "chemicals used in the [Covid-19] testing and on viral loads carried by the vaccinated versus the unvaccinated," and again referencing the "harmful nature of chemicals used in the testing kits." (*Id.*, Page ID # 100, ¶¶ 44-

46; *see also* Exhibit 2 attached to Option Care's Motion to Dismiss Am. Compl., RE 12-2, Page ID # 143-145).  In the Amended Complaint, Prida repeatedly alleges that Ethylene Oxide is a known human carcinogen used to sterilize nasal swabs for Covid-19 tests and that such chemical and others used in the testing are harmful. (Am. Compl., RE 10, Page ID # 98-102, ¶¶ 40, 44, 46, 54).

In a February 25, 2022 email to Hagglund and Coe, Prida provided a substantial amount of scientific and health-related information about chemicals that are allegedly used in the Covid testing swabs, Ethylene Oxide and Sodium Azide; warnings from the "Poison Control Center" about health hazards of rapid antigen tests; CDC website articles on viral loads being similar for vaccinated and unvaccinated persons; research from an Oxford University clinical research group suggesting that vaccines do not "actually work;" noting that Ohio did not require testing; and explaining that Prida eats primarily organic, non-GMO foods, avoids antibiotics and uses only natural, herbal remedies.  (*Id.*, Page ID # 100, ¶ 45; *see also* Exhibit 2 attached to Option Care's Motion to Dismiss Am. Compl., RE 12-2, Page ID # 143-145).

In the closing paragraph of her February 25, 2022 email, Prida states, among other things, that she does not take lightly "what I choose to put in [my body], or choose not to put in it," and describes medical issues she had experienced in the past as a result of certain foods and chemical products.  (Exhibit 2 to Option Care's

Motion to Dismiss Am. Compl., RE 12-2, Page ID # 145). Prida concludes her email: "I cannot in good conscience alter my God given body 'my temple' and will not risk the harm that may come from the chemicals in the testing." (*Id.*)

On February 25, 2022, two different Option Care managers allegedly advised Prida that noncompliance with the weekly Covid testing program would result in termination of her employment. (Am. Compl., RE 10, Page ID # 100-101, ¶¶ 47, 49). On March 1 and 2, 2022, Prida sent a group of documents she called "notarized affidavits" to Option Care officials. (*Id.*, Page ID # 101-102, ¶¶ 51, 54; *see also* Exhibit 1 attached to Prida's Brief in Opposition to Defendant's Motion to Dismiss Am. Compl., RE 14-1, Page ID # 192-210). These "affidavits" were comprised of three separate documents and nineteen (19) pages: (1) Affidavit of Declination for Offer of Medical Interventions, Products, and Devices; (2) Notice of Liability and Fee Schedule; and (3) Affidavit/Declaration of Truth. (*Id.*)

Prida's affidavits described in detail certain of her personal characteristics, non-consent to Option Care's offer of medical interventions, products, and/or devices, her alleged natural and constitutional rights, and identified such supporting sources as The Nuremberg Code of 1947, *Marbury v. Madison*, *Miranda v. Arizona*, the United Nations Human Rights: International Covenant on Civil and Political Rights, various federal statutes, certain provisions from the U.S. and Ohio Constitutions and Bill of Rights. (*Id.*) Prida asserted, among many other things:

5

"[M]y physical body is my property and I own the right to it;" Option Care interfered with her "God given rights as sovereigns to privacy in matters pertaining to my health and body;" Option Care's Covid policies were based on "assumption(s), presumption(s) and not scientific facts;" Option Care had not thoroughly researched Covid testing to prove whether it was "entirely safe" and would not "catalyze a lifelong neurodegenerative process, disorder, or disease by poisoning and disabling my brain." (*Id.*, Page ID # 202-204.)  Prida made multiple references to "informed consent" and "free choice" in connection with Covid testing.  (*Id.*, Page ID # 193, 195-196, 201-202, 204-205).  Prida also set forth a chronology of alleged events relating to Option Care's Covid-19 policy, including two different managers informing her on February 25, 2022 that noncompliance with the testing program would result in termination.  (*Id.*, Page ID # 208).

Prida alleges that she met with Option Care managers and human resource personnel on multiple occasions in late February and early March 2022 to discuss her requested testing exemption.  (Am. Compl., RE 10, Page ID # 100-102, ¶¶ 47, 54, 57). On March 2, 2022, Prida allegedly met with two Option Care managers and suggested alternative forms of testing that did not require the use of cotton swabs with Ethylene Oxide, as well as possible scheduling changes.  (*Id.*, Page ID # 101-103, ¶ 54-58).  On March 3, 2022, Prida allegedly received an email from her manager reiterating that if she did not submit to testing, her employment would be

6

terminated.  (*Id.*, Page ID # 103, ¶ 59).  Prida alleges that when she arrived at work on March 9, 2022 and advised her manager that she had not been tested for Covid-19, Option Care terminated her employment for that reason.  (*Id.*, Page ID # 92, 103-104, ¶¶ 3, 63). Prida alleges that at no point during her communications with Option Care managers did they discuss with Prida a reasonable accommodation to the weekly Covid testing requirement. (*Id.*, Page ID # 99-103, ¶¶ 43, 47, 49, 58-59).

Prida alleges she timely filed an EEOC charge "raising the issues in this Complaint" and received a Notice of Right to Sue. (*Id.*, Page ID # 104, ¶¶ 64-65). On July 21, 2023, Prida filed an Amended Complaint containing the above factual allegations and asserting three legal claims against Option Care: Count I: religious discrimination/failure to accommodate under Title VII of the Civil Rights Act of 1964; Count II: retaliation under Title VII; and Count III: religious discrimination/failure to accommodate under Ohio Rev. Code § 4112.02. (Am. Compl., RE 10, Page ID # 91-107, ¶¶ 1-88).  The legal claims are based on Option Care's denial of Prida's request to be exempted from Option Care's weekly Covid-19 testing requirement and the termination of her employment for refusing to submit to testing. (*Id.*, Page ID # 104-106, ¶¶ 66-88).[1]

---

[1] Paragraphs 83 through 88 of Prida's Amended Complaint are misnumbered as paragraphs 21 through 26.

**B.    The District Court Dismisses Prida's Amended Complaint.**

On October 24, 2023, the District Court issued a Memorandum Opinion and Order granting Option Care's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Civil Rule 12(b)(6) and a Judgment Entry Dismissing the case. (Mem. Opinion and Order, RE 16, Page ID # 225-243; Judgment Entry of Dismissal, RE 17, Page ID #244). The District Court held that because Prida failed to plausibly plead facts that, if believed, would show that she has actionable claims of religious discrimination/failure to accommodate under Title VII or Ohio Rev.Code § 4112.02, or of retaliation under Title VII, her Amended Complaint was subject to dismissal. (*Id.,* Page ID # 236, 240, 242).

As to Counts I and III of the Amended Complaint, the District Court held that Prida did not plausibly plead the existence of a conflict between her religious beliefs and Option Care's Covid testing requirement, rather, her refusal to submit to testing was based on "scientific and political factors, not religious beliefs." (*Id.*, Page ID # 234, 236, 241-242). The District Court explained that granting Prida's exemption request based on such secular factors would broadly "engulf every employer practice with which [Prida] disagrees," and give her "carte blanche to accept or reject nearly any condition of her employment." (*Id.*, Page ID # 235-236).

The District Court dismissed Prida's retaliation claim (Count II) because Prida failed to plausibly plead facts showing that (1) she engaged in protected activity

8

under Title VII, and/or (2) the existence of a causal connection between a protected activity and an adverse employment action. (*Id.*, Page ID # 240). In so concluding, the District Court found that Plaintiff's chronology of alleged facts, as pled in the Amended Complaint, showed that her alleged protected activity occurred *after* Option Care had already informed Prida several times that her failure to submit to testing would result in her termination. (*Id.*, Page ID # 239-240).

## II.     SUMMARY OF ARGUMENT

In her Appellant's Brief, Prida largely sidesteps the factual allegations set forth in her Amended Complaint and the documents incorporated therein by reference as part of her effort to convince this Court that she has plausibly pled actionable claims of religious discrimination and retaliation. (See Brief of Plaintiff-Appellant, RE 19, Page ID # 11-12). Instead, Prida presents a highly academic, complex and theoretical analysis of how she believes "religious beliefs" and/or "religion" should be defined and recognized for purposes of Title VII claims. Prida's arguments, however, are undermined by her own factual allegations that plainly demonstrate that her objections to Option Care's Covid-19 testing requirement were not based on her religious beliefs, but on scientific, medical and political factors, as well as personal lifestyle choices.

Notably, the expansive definition of "religion" that Prida advocates in her Brief is not relevant for purposes of the disposition of this case. As Prida

acknowledges, Option Care has not and does not question the validity or sincerity of her religious beliefs and practices in general. (*Id.*, Page ID # 43). Option Care's argument is that the causes of action set forth in the Amended Complaint are deficient as pled because Prida's sincerely held religious beliefs *were not* the reason for her refusal to submit to Covid testing. Her refusal was based on various secular factors (scientific, medical, political, lifestyle and her *choice* not to have specified chemicals put in her body). Because there was no conflict between Prida's religious beliefs and Option Care's testing requirement, Prida has not pled sufficient facts to show that she is entitled to protection under Title VII.

Prida's arguments in her Appellant's Brief are based primarily on two U.S. Supreme Court cases, *U.S. v. Seeger*, 380 U.S. 163 (1965) and *Welsh v. U.S.*, 398 U.S. 333 (1970), both of which addressed the definition of religion under the Military Training and Service Act, 50 U.S.C.S. § 456(j), for purposes of conscientious objector challenges to the military draft. Prida also relies heavily on the definition of religion set forth in Samuel Johnson's 1775 dictionary (involving reverence to and moral guidance from a Supreme Being or God). (*Id.,* Page ID # 13-14, 16-27). While these authorities may be interesting from a historical and academic perspective, they have scant relevance to how the term "religion" has been or should be defined for purposes of a failure to accommodate case under Title VII.

10

In the fifty-plus years since *Seeger* and *Welsh* were decided, a body of case law has evolved regarding Title VII's definition of religion ("all aspects of religious observance and practice, as well as belief") that has its roots in the definition originally set forth in *Seeger* and *Welsh*. Indeed, the Third Circuit cases that Prida claims were incorrectly decided, *Africa v. Com. of Pa*, 662 F.2d 1025 (3rd Cir. 1981) and *Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, 877 F. 3d 487 (3rd Cir. 2017), both begin their analysis with the definition of religion and related principles set forth in *Seeger* and *Welsh*. *Africa, Fallon,* and the courts that have recently viewed them as persuasive in Title VII cases, built upon the foundation laid by *Seeger* and *Welsh* in addressing entirely different factual and legal scenarios involved in religious challenges to vaccinations and testing. Prida disagrees with how the definition of religion has evolved for purposes of Title VII cases and implores this Court to adopt a definition of religion that is consistent with Prida's beliefs and legal interests. But, again, the manner in which courts have defined the term "religion" is beside the point in this case because Prida's alleged objections to Option Care's Covid testing policy are not based on her religious beliefs.

Based on Prida's Brief and the Amended Complaint, Prida's alleged religious and secular beliefs give her the right to make her own choices about how to care for her body, including whether or not to submit to medical interventions. Given that Prida admittedly can choose whether or not to consent to Covid testing, her religious

beliefs do not prohibit her from doing so.  The District Court recognized this reality in holding that Prida failed to plausibly plead facts showing she is entitled to protection under Title VII.   Prida argues that her religious beliefs are all-encompassing, to the point that that they infuse and regulate every aspect of her life and all decisions she makes.  As such, Prida argues that her religious beliefs cannot be viewed as being separate and distinct from her medical, scientific and political beliefs, rather, all such matters in her life are "religious."   (Brief of Plaintiff-Appellant, RE 19, Page ID # 41-42, 53, 54).  Based on this premise, Prida essentially argues that she may avoid any employer requirement with which she disagrees if, in her judgment, it conflicts with her all-encompassing religious beliefs.

District courts within this federal Circuit and other Circuits have rejected Prida's arguments in cases presenting substantially similar factual allegations and legal claims.  Most such cases rely in part on principles enunciated by the U.S. Supreme Court in *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972), that "the very concept of ordered liberty precludes allowing a 'blanket privilege' to 'make [one's] own standards on matters of conduct in which society as a whole has important interests.'"   As the District Court observed, Prida's alleged secular and religious beliefs that she can choose what to do and what not to do with her body, if allowed, would "grant [Prida] carte blanche to accept or reject nearly any condition of her employment" and amount to a "blanket privilege and a limitless exclude for avoiding

all unwanted obligation." (Mem. Opinion and Order, RE 16, Page ID # 235-236). In short, Prida advances an argument for Title VII protection that courts have generally rejected.

The District Court also properly dismissed Prida's retaliation claim (Count II) because Prida fails to plead facts that, if believed, would show that (1) she engaged in protected activity under Title VII; and (2) there was a causal connection between protected activity and an adverse employment action by Option Care. (*Id*., at Page ID # 236-240). Prida's argument that her submission of "sworn affidavits" to Option Care constitute protected "opposition" activity fails because (1) those documents do not reflect opposition to alleged unlawful activity under Title VII; and (2) even if they did, Prida submitted her affidavits *after* Option Care had repeatedly told her that failure to submit to Covid testing would result in her termination. Based on the allegations as pled, Prida's termination had nothing to do with her alleged protected activity, hence, the causal connection element is lacking. Prida's retaliation claim is also barred because she failed to exhaust mandatory administrative prerequisites to asserting such claim.

Finally, Prida's argument that the District Court erred by dismissing her O.R.C. §4112.02 claim *sua sponte* on "grounds not raised by Defendants" is both confusing and meritless. First, the District Court dismissed Count III of Prida's Amended Complaint under Ohio law for the same reasons, and based on the same

analysis, that it dismissed Count I under Title VII.  Defendants *did* move for dismissal of the O.R.C. §4112.02 claim on those and other grounds, so the District Court did not act *sua sponte*.  Moreover, given that Prida admits she is asserting only a religious discrimination failure to accommodate claim, not a disparate treatment claim, her final argument pertaining to the District Court's dismissal of Count III of the Amended Complaint is moot. (See Prida Brief in Opposition to Option Care's Motion to Dismiss Am. Compl., RE 14, Page ID # 177, 186 and Prida's Appellant's Brief, RE 19, Page ID # 10, 12, 16).  The District Court presumably addressed Count III separately because, as that Count is presented in the Amended Complaint, it arguably could be read as asserting a disparate treatment claim (which Prida has since clarified is not the case).

## III.  <u>ARGUMENT</u>

### A.    **Standard of Review.**

The standard of review applicable to the District Court's decision granting Option Care's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Civil Rule 12(b)(6) is *de novo*.  *See Sanders v. Freeman*, 221 F.3d 846, 851 (6th Cir. 2000).  Dismissal under Civil Rule 12(b)(6) is required when a complaint does not contain sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When measuring the legal sufficiency of a complaint, courts separate factual allegations from legal

14

conclusions and need accept as true only well-pleaded factual allegations. *Nwanguma v. Trump*, 903 F.3d 604, 607 (6th Cir. 2018). "Legal conclusion[s] couched as factual allegation[s] need not be accepted as true." *Id.* (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). After legal conclusions are disregarded, the complaint must set forth factual allegations sufficient to "raise a right to relief above the speculative level." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Inman v. Edwin Shaw Rehab, LLC*, No. 5:13CV1269, 2013 U.S. Dist. LEXIS 160153, at *4 (N.D. Ohio Nov. 8, 2013). "[A] plaintiff's obligation to provide the 'grounds' of her 'entitle[ment] to relief,'" thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679. The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under *some* viable legal theory." *Scheid v.*

*Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (internal quotation marks omitted) (emphasis in original). The purpose of Rule 12(b)(6) is to "allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare the litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

As the District Court noted, when resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such items are referenced in the complaint and central to the claims therein. (See Mem. Opinion and Order, RE 16, Page ID # 229-230, citing *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008) and *Stringfield v. Graham*, 212 F.App'x 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c).")). This Court may properly consider Prida's emails and "notarized affidavits" that she submitted to Option Care, which were filed along with the Parties' briefing in the District Court, because such materials are "integral to the complaint" and "incorporated by reference" in the Amended Complaint. *See Clark v. Jackson*, No. 22-5553, 2023 WL 2787325, at *2-3 (6th Cir. Apr. 5, 2023). The emails and "affidavits" that were filed with the District

Court are properly considered as part of the Court's ruling on Option Care's Motion to Dismiss, without converting such Motion into a motion for summary judgment.

**B.     The District Court Properly Dismissed Prida's Religious Discrimination/Failure to Accommodate Claims.**

**1.      Religious Discrimination Claims Under Title VII.**

The District Court properly dismissed Counts I and III of Prida's Amended Complaint alleging religious discrimination/failure to accommodate under Title VII and Ohio Rev. Code § 4112.02, respectively, because both Counts fail to plead a plausible claim against Option Care.[2]  Under Title VII (and Ohio law), it is unlawful for an employer to discharge or otherwise discriminate against any individual "because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).  The statute defines the term "religion" to include "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(i).  It is well-established that claims of employment discrimination under Title VII and Ohio Rev. Code § 4112.02 are subject to the same analysis, and courts apply federal law to such claims asserted under Ohio law.  *Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015) (*citing Abbott v. Crown Motor Co.*, 348 F.3d 537, 541 (6th Cir. 2003);

---

[2] As noted earlier, Prida explicitly states that she is only advancing a religious accommodation claim, not a disparate treatment claim. (*See* Prida's Brief in Opposition to Option Care's Motion to Dismiss Am. Compl., RE 14, Page ID # 177, 186); (Prida's Appellant Brief, RE 19, Page ID # 10, 12, 16).  Therefore, Option Care does not specifically address disparate treatment claims herein.

*Plumbers & Steamfitters Joint Apprenticeship Comm v. Ohio Civ. Rts. Comm'n*, 66 Ohio St.2d 192,196 (1981).  Therefore, like the District Court, Option Care will address Counts I and III of the Amended Complaint together.

To state an actionable claim of religious discrimination/failure to accommodate, a plaintiff must plausibly plead that she: (1) holds a sincere religious belief that conflicts with an employment requirement; (2) informed the employer about the conflict; and (3) was discharged or disciplined for failing to comply with the conflicting employment requirement.  *Yeager*, 777 F.3d at 363 (*quoting Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007)).  Notably, the Third Circuit in *Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 490 (3rd Cir. 2017), which Prida contends was incorrectly decided, identified those same three elements for pleading a religious accommodation claim under Title VII.

Courts within the Sixth Circuit and other federal circuits have dismissed religious discrimination/failure to accommodate claims under Title VII at the pleading stage when the plaintiff fails to sufficiently plead facts supporting any one of these requisite elements – including particulars about the plaintiff's religious beliefs and/or details showing *how* those beliefs conflicted with a condition of employment.  *Pedreira v. Kentucky Baptist Homes for Child, Inc*., 579 F.3d 722, 728 (6th Cir. 2009) (affirming dismissal of religious discrimination claim because the plaintiff did "not allege[ ] any particulars about her religion that would even

18

allow an inference that she was discriminated against *on account of her religion*")
(emphasis added); *Hall v. Baptist Mem'l Health Care Corp.,* 215 F.3d 618, 627 (6th
Cir. 2000); *Macon v. J.C. Penney Co*., 17 F. Supp. 3d 695, 699 (N.D. Ohio Apr. 23
2014), *aff'd at* No. 14-3454 (6th Cir. 2014); *Keys v. Humana, Inc.,* 684 F.3d 605,
610 (6th Cir. 2012); *Devore v. Univ. of KY Bd. of Trs*., No. 5:22-cv-00186, 2023 U.S.
Dist. LEXIS 167239 *8 (E.D. Ky, Sept. 20, 2023) (A plaintiff must "show that it
was the religious aspect of her conduct that motivated her employer's actions.").

### 2. Prida's Alleged Objections to Covid Testing are Based on Secular Factors, Not Religious Factors.

In this case, Prida fails to plead sufficient facts to plausibly show that her
sincere religious beliefs conflicted with Option Care's Covid testing requirement.
Indeed, Prida's Amended Complaint and the documents incorporated therein by
reference (including her emails and "affidavits" submitted to Option Care) show the
*absence* of such a conflict because Prida's religious beliefs allowed her to *choose*
whether or not to submit to Covid testing.  Prida chose not to submit to testing
because of medical and scientific concerns she had about the safety of the chemicals
used in testing, the efficacy of the testing, and her commitment to personal autonomy
and particular lifestyle choices.  Accordingly, Prida fails to plausibly plead facts
showing the first element of an actionable claim of religious discrimination/failure
to accommodate.  *Yeager*, at 363; *Tepper*, at 514.  See also, *Devore*, *supra* at *10 (a

19

plaintiff's belief that she must be "able to choose what shall or shall not happen" to her is not a protected religious belief.).  Indeed, given the volume and detail of the secular factors that Prida presented to Option Care as reasons for her opposition to Covid testing, it is fair to conclude that she did not inform her employer of a conflict between testing *and her religion* (the second element of a claim).  *Id.*

Prida admits that Option Care accommodated her religious beliefs by exempting her from the Covid vaccination requirement *on the condition* that she submit to weekly testing.  (Am. Compl., RE 10, Page ID # 99-100, 102-103, ¶¶ 43-44, 58).  In so doing, Option Care showed that it held no discriminatory animus toward Prida's alleged religious beliefs.  But Prida desired an additional, broader accommodation in the form of exemption from the testing requirement as well.[3] Prida's specific grounds for objecting to testing were different and distinct from her specific grounds for objecting to the vaccine.  Prida objected to the vaccine because of her alleged sincerely held belief that "abortion is gravely wrong" and vaccines

---

[3] In the Amended Complaint, Prida cites to EEOC guidance on a private employer's obligations relative to offering accommodation to *vaccine mandates*.  (Am. Compl., RE 10, Page ID # 97-98, ¶¶ 31, 35, *citing What You Should Know About Covid 19 and the ADA, The Rehabilitation Act, and other EEOC Laws* K.1, K.2, EEOC).  The EEOC guidance says periodic Covid-19 testing is one example of a reasonable accommodation that an employer might offer to an employee who has not been vaccinated due to sincerely held religious beliefs (see subsection K.2).  In other words, the EEOC guidance that Prida cites actually validates Option Care's actions as lawful and appropriate.

20

"use abortion derived fetal cell lines [which] offends her and her religious faith." (*Id.*, Page ID # 98-99 ¶ 40; *see also* Exhibit 1 attached to Option Care's Motion to Dismiss Am. Compl., RE 12-1, Page ID # 142).   In support of her alleged religious belief against abortion, Prida quoted Exodus 20:13 and the Sixth Commandment, "Thou shall not murder."  (*Id.*)  As to the vaccine, even if Prida had believed it was safe and effective from a medical/scientific standpoint, her alleged religious beliefs regarding the use of abortion-derived fetal cells *would still conflict* with the vaccine and require her to refuse it.  That is not true of Prida's objection to Covid testing.

In her December 28, 2021 exemption request and her February 25, 2022 email to Option Care managers, Prida objected to Covid testing specifically because of the harmful chemicals used in the testing, Ethylene Oxide and Sodium Azide in particular.  (Am. Compl. RE 10, Page ID #98-99, ¶40; Exhibits 1 and 2 attached to Option Care's Motion to Dismiss Am. Compl. RE 12-1 Page ID #142 and RE 12-2 Page ID #143-145).  In her emails to Option Care, Prida cited to several medical articles and journals allegedly establishing that such chemicals are a known human carcinogen, poisonous, and can cause serious adverse health conditions. (*Id.*).

Prida does not cite to any specific religious article, tenet, biblical passage or teaching specifically in support of her objection to testing.  (*Id.*)  Instead, after detailing the harmful chemicals allegedly used in Covid testing and citing to at least five supporting scientific articles and studies, Prida generally states:  "My body is

21

my temple, given to me by God and I do not take lightly what *I choose to* put in it, or *choose not to* put in it…and will not *risk the harm* that may come from the chemicals in testing." (Exhibit 2 attached to Option Care's Motion to Dismiss Am. Compl., RE 12-2, Page ID # 145) (emphasis added). Under these alleged beliefs, if Prida subjectively believed that there were no medical or health risks involved in Covid testing, i.e., that it was safe and effective, she would not have objected to it. This is a medical decision, not a religious one. Moreover, Prida's alleged religious beliefs, by her own explanation, allowed her to *choose* whether or not to submit to testing, and she chose not to based on medical and scientific factors. (*Id.*)

Prida's sworn affidavits that she submitted to Option Care on March 1, 2022 consist of some nineteen (19) pages of historical, legal, political and medical information and related reference sources addressing Prida's purported rights as to personal choice, individual liberty, informed consent to medical interventions, bodily autonomy, and other such matters, with a handful of purported biblical passages and religious terms sprinkled in without any coherent explanation or purpose. (See Exhibit 1 to Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss Am. Compl., RE 14-1, Page ID # 192-210). Prida's affidavits do not include an explanation of precisely how her alleged religious beliefs conflict with Option Care's Covid testing requirement or *prohibit* her from submitting to such testing.

22

Prida's factual allegations, taken at face value, reveal that she objected to the Covid testing requirement based on medical, scientific, political and personal lifestyle grounds—not a prohibition imposed by any specific religious beliefs.  Prida describes her alleged religious beliefs in paragraphs 40, 44-46 and 51 of the Amended Complaint and in some of the associated documents (Amended Complaint, RE 10, Page ID # 100-101; s*ee also* Exhibits 1 and 2 to Defendants' Motion to Dismiss Plaintiff's Am. Compl. RE 12-1, 12-2). However, taken as a whole, Prida's alleged objections to Covid testing are fundamentally based on non-religious factors.  Indeed, the Amended Complaint in and of itself shows this:

**Am. Compl. ¶ 32** – The testing policy is "discriminatory" and "unreasonable" because those who are fully vaccinated still carry and transmit Covid-19 and pose essentially the same risk as the unvaccinated of carrying and transmitting Covid-19 when showing no symptoms.

**Am. Compl. ¶¶ 40, 46, 54, 58** – Prida could not subject herself to testing because Ethylene Oxide, a known carcinogen, is used in the PCR tests, and she could not risk the potential harm from the chemicals used in the testing (which relates to "how I should care for and what I should do with my temple of God").

**Am. Compl. ¶ 44-45** – Prida sent Option Care "links to NIH and CDC websites regarding chemicals used in the testing and on viral loads carried by the vaccinated versus the unvaccinated," cited articles and studies about harmful chemicals used in the testing kits, and explained her dietary practices.  (See also Exhibit 2 attached to Option Care's Motion to Dismiss, RE 12-2, Page ID# 143-144).

**Am. Compl. ¶¶ 49, 69** – Prida does not work in a patient or customer facing position and does not work in a state requiring weekly testing for the unvaccinated.

(Amended Complaint, RE 10, Page ID #97-104).

Collectively, the above allegations demonstrate beyond any plausible dispute that Prida's objections to Option Care's weekly Covid testing requirement were rooted in Prida's views about the medical risks of nasal swab testing, the efficacy of the testing, scientific data about viral loads, harmful chemicals, and Prida's personal lifestyle and dietary choices. Prida's allegations in paragraphs 40, 44-46, 51 and 58 of the Amended Complaint about not harming her "God given body," being "accountable to our creator," and other religious beliefs boil down to formulaic citations of the legal elements of a religious discrimination claim, i.e., a legal conclusion. Prida's allegations reflect an attempt to affix religious significance to a personal choice and a commitment to bodily autonomy based on scientific and medical concerns. (Am. Compl. RE 12, Page ID #98-103). This does not meet the pleading requirements of *Twombly* and *Iqbal*, *supra*. Whether Prida's body "belonged to God" or only to herself, her objections to testing would be the same because they were based on secular factors.

### 3. Federal Courts Have Generally Dismissed The Claims Prida Advances Based On Similar Factual Allegations.

The District Court, and other courts that have addressed the types of allegations that Prida advances under Title VII and O.R.C. § 4112.02, have determined that such allegations are subject to dismissal pursuant to Rule 12(b)(6) because they fail to plausibly plead the first element of a religious

discrimination/failure to accommodate claim: the existence of a sincerely held religious belief that conflicts with an employment requirement.

Prida offers no new arguments or case law in her effort to persuade this Court to depart from the overwhelming weight of on-point case authorities addressing substantially similar factual allegations as in this case, and rejecting legal claims based thereon. Instead, Prida relies on an expansive and antiquated reading of *Seeger/Welsh* to support the basic argument that all of Prida's personal decisions are "religious" because her life allegedly is guided by moral choices dictated by a "Supreme Being." (Appellant Brief, RE 19, Page ID # 14-16, 27, 41). Prida glosses over the fact that most of the on-point court authorities, including the District Court in this case, begin their analyses with how *Seeger/Welsh* defined "religion." (See, e.g., Mem. Opinion and Order, RE 16, Page ID # 231). Many of the on-point cases also follow the analysis and principles advanced by the Third Circuit in *Africa/Fallon*, which built upon *Seeger* and *Welsh* to formulate a more modern, holistic analysis of religion for purposes of Title VII cases. The fact that *Africa* and *Fallon* were Third Circuit decisions does not make them any less applicable to similar claims brought in other federal circuits.

In the months preceding and the months following the District Court's October 24, 2023 Order granting Option Care's 12(b)(6) motion, multiple district courts within and outside the Sixth Circuit have similarly dismissed complaints

alleging very similar facts and legal arguments.  In *Lawhead v. Brookwood Mgmt. Co.*, LLC, No. 5:22-CV-00886-JRA, 2023 U.S. LEXIS 54355 at *7-8 (N.D. Ohio, Mar. 29, 2023) (*quoting Pedreira,* 579 F.3d at 728), the Northern District of Ohio previously recognized that for a religious discrimination case under Title VII to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege particulars about her religion that would allow an inference that she was discriminated against on account of her religion.  To do so, the plaintiff "must show that it was the religious aspect of her [conduct] that motivated her employer's actions."  *Id.*, *citing Keys v. Humana, supra* at 610.  The *Lawhead* court dismissed the plaintiff's religious discrimination claim because the stated concerns that restrained her from administering the Covid-19 booster were "medical and political concerns," not sincerely held religious beliefs.  *Id.*, *10.

In *Ulrich v. Lancaster Gen. Health*, Civ. A No. 22-4945, 2023 U.S. Dist. LEXIS 64750 (E.D. Pa., April 13, 2023), the Eastern District of Pennsylvania dismissed the plaintiff's amended complaint alleging religious discrimination/failure to accommodate under Title VII and Pennsylvania law on alleged facts nearly identical to those in this case.  In *Ulrich*, the plaintiff requested an exemption from the employer's bi-weekly testing requirement that was a condition of her previously granted vaccine exemption.  *Id.*, *1-3.   In support of such request, the plaintiff presented her employer with arguments against testing that were similar to those put

forth by Prida (without all the medical and scientific data):  plaintiff's body was the "temple of the Holy Spirit," and her religious beliefs prohibited "actions or treatment of my body which could bring potential harm . . . cause adverse health effects. . . or in any way disrespect or dishonor my body or violate my God-given liberty to choose what I allow to enter my body."  *Id.*,*2-6.

The *Ulrich* court held that the plaintiff's allegations "clearly state medical concerns which she attempts to 'cloak with religious significance,'" and it would be "a step too far" to count everything the plaintiff believed about health as a religious practice.  *Id.*,*15-16 (*citing Africa v. Pennsylvania*, 662 F.2d 1025, 1030-1031 (3d Cir. 1981) and *Geerlings v. Tredyffrin/Easttown Sch. Dist*., No. 21-4024, 2021 U.S. Dist. LEXIS 183966 *7 (E.D. Pa. Sept. 27, 2021)).  The court reasoned that the "notion that we should not harm our bodies is ubiquitous in religious teaching, but a 'concern that [a treatment] may do more harm than good is a medical belief, not a religious one.'" *Id*., *14.  The court also quoted from the Supreme Court's opinion in *Wisconsin v. Yoder* that "the very concept of ordered liberty precludes allowing a person a 'blanket privilege' to 'make his own standards on matters of conduct in which society as a whole has important interests.'" *Id*., *12.

The *Ulrich* court relied heavily on a case decided by the Middle District of Pennsylvania a few months earlier, *Finkbeiner v. Geisinger Clinic*, 623 F.Supp.3d 458, 465, 2022 U.S. Dist. LEXIS 154512 (M.D. Pa. 2022), appeal dismissed No. 22-

2714, 2023 WL 6057495 (3rd Cir. Sept. 18, 2023)).   In *Finkbeiner*, the court considered the plaintiff's allegations under Title VII that she was a Christian and sincerely believed she had a "God-given right" to make her own choices regarding what to put into her body and whether to submit to Covid testing.  *Id.*, 463.  The plaintiff also alleged the perceived "unsafe" nature of Covid testing and the superiority of her immune system.  *Id.*  The court held that these statements showed that the plaintiff's opposition to testing centered on medical/scientific beliefs, not religious beliefs, and dismissed her complaint.  *Id.*, 465.

Five months after *Finkbeiner*, in *Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360, 2023 U.S. Dist. LEXIS 10747 (E.D. Pa. Jan. 23, 2023), the Eastern District of Pennsylvania followed suit and dismissed a complaint alleging religious discrimination under Title VII, once again considering similar alleged facts to those alleged by Prida.  In *Blackwell*, the plaintiff objected to nasal swab testing because "the observance of her religious beliefs forbids insertion of an unwanted foreign objection (*sic*) into her body." *Id.*, *3-4. The court dismissed the plaintiff's complaint because her objections to Covid testing focused on the employer's factual and scientific basis for imposing the testing requirement, which were "political, sociological, or philosophical," not religious.  *Id.*, *23 (*citing Fallon v. Mercy Catholic Med. Ctr.,* 877 F.3d 487, 490 (3d Cir. 2017) (*quoting United States v. Seeger*, 380 U.S. 163, 165 (1965)).  The *Blackwell* court further explained that the

plaintiff's belief against inserting an unwanted foreign object into her body was not part of a "comprehensive system of beliefs about fundamental or ultimate matters." *Id*., *23-24 (*citing Finkbeiner, supra* at *10 (*quoting Fallon*, at 492)).

The Western District of Wisconsin applied similar reasoning in *Egelkrout v. Aspirus, Inc*., No. 22-cv-118-bbc, 2022 U.S. Dist. LEXIS 128519 (W.D. Wisc. July 20, 2022) in the course of dismissing the plaintiff's Title VII religious discrimination claim pursuant to Rule 12(b)(6).   In *Egelkrout*, the plaintiff objected to her employer's Covid-19 vaccination requirement because it allegedly violated her sincerely held religious beliefs as a Catholic.  *Id*., *2.  The court determined that it was evident from the plaintiff's complaint that she opposed Covid testing for "personal and medical reasons," including the fact that the testing would "expose her to [carcinogenic] chemicals."  *Id*., *7-8 (internal citations omitted).

In *Sturgill v. Am. Red Cross*, E.D. Mich. No. 22-cv-11837, 2023 U.S. Dist. LEXIS 224036, at *16-17 (Dec. 15, 2023), the plaintiff objected to the employer's Covid vaccine requirement because "the ingredients can cause serious harm and even death" and she could not "alter God's design."  The Court held that plaintiff's purported religious beliefs were clearly medical at the core and noted that the plaintiff "sought a medical exemption disguised as a religious one," and this did not entitle any of them to Title VII protection.  *Id*. at *19.  The *Sturgill* Court also cautioned against granting Title VII protection to claims involving alleged "God-

29

given rights" to make one's own choices and "obey one's conscience," because doing so would give plaintiffs "carte blanche to object to and request accommodations for anything that even mildly offends their sensibilities." *Id.*, *22.

In *McKinley v. Princeton Univ.*, D.N.J. Civil Action No. 22-5069 (MAS) (TJB), 2023 U.S. Dist. LEXIS 215345, at *11-13 (Dec. 1, 2023), the New Jersey District Court dismissed a plaintiff's religious discrimination claim under Title VII and New Jersey state law because the plaintiff's alleged opposition to Covid testing was based on personal or medical beliefs, not religious beliefs. Like Prida, the *McKinley* plaintiff claimed to object to Covid testing on the basis that her "body is a temple." *Id.*, *2-3. However, in her own emailed statements, the plaintiff questioned the efficacy of her employer's Covid policies, claimed the tests could not distinguish between influenza and the coronavirus, identified health risks, and questioned the manner in which her DNA and genetic data would be traced and stored as a result of testing. *Id.,* *2-3, 12. The Court concluded that such objections did not amount to protected religious beliefs under Title VII or state law. *Id.*, *9.

In *Gatto v. Johnson & Johnson Servs., Inc.*, Civil Action No. 2:23-cv-1607, 2024 U.S. Dist. LEXIS 77792 (W.D. Pa., Apr. 29, 2024), the Western District of Pennsylvania very recently dismissed a plaintiff's religious discrimination claim where she objected to nasal swab testing because her body is "a temple of the Holy Spirit," the testing conflicted with how God intended the human body to function,

30

foreign matter would be inserted into her body, and her bodily fluids would be collected and reported. *Id.*, *3-4. The court held that plaintiff's beliefs constituted an "isolated moral teaching" and that she failed to sufficiently plead how collecting a nasal secretion sample conflicted with plaintiff's religious beliefs. *Id.*, *12-13.

### 4.    There is a Compelling Legal Basis to Affirm the District Court's Dismissal of Prida's Amended Complaint.

The above case authorities are directly on-point, both factually and legally, to the allegations set forth in Prida's Amended Complaint. These cases collectively establish that objections to Covid-19 testing that are founded on scientific, medical, health-related or personal concerns about potential harm to one's "God-given body," are *not* based on sincerely held religious beliefs, despite being cloaked in religious language. District courts have held that such objections are based on isolated secular concerns and are not part of a "comprehensive system of beliefs about fundamental or ultimate matters." *Ulrich* at *13; *Blackwell* at *23-24; *Finkbeiner* at *10; *Geerlings* at *7; *Sturgill* at *19; *McKinley* at *9; *Gatto* at *12-13. Many of these cases further held that a plaintiff's belief that she has a God given right to make her own choices about what to put into her body and what not to put into it is not a protected belief under Title VII. *Devore*, at *4; *Ulrich,* at *2-6; *Finkbeiner*, 623 F.Supp.3d at 465-66; *Blackwell*, at * 8; *Sturgill,* at *22.

The plaintiffs in these cases, like Prida, failed to plausibly plead that they held a sincere religious belief that conflicted with a job requirement, which is the first essential element of an actionable religious discrimination/failure to accommodate claim. Moreover, the plaintiffs in those cases, like Prida, were effectively seeking a "blanket privilege" or "carte blanche" to avoid unwanted obligations that the employer must "unfailingly respect." Courts have generally rejected such position for purposes of plausibly pleading an actionable religious discrimination claim under Title VII. (*Id*.) These cases also demonstrate that courts within and outside the Sixth Circuit have taken guidance from the Third Circuit's on-point analysis in *Africa* and *Fallon*, as well as the Supreme Court's instruction in *Wisconsin v. Yoder* that the very concept of ordered liberty requires some delineation from the courts as to what is and what is not protected from state (or employer) regulation based on religion as to matters in which society as a whole has important interests. 406 U.S. 205, 215 (1972); *see, e.g., Devore*, *supra* at *8. Here, Prida seeks that same "blanket privilege" that courts have uniformly rejected, arguing that her religious beliefs are all-encompassing and apply to all aspects of her life, such that nothing she thinks, says or does is "secular."

Furthermore, nothing in Prida's Amended Complaint plausibly alleges that it was the *religious aspect* of her refusal to submit to weekly testing that motivated Option Care's enforcement of its testing policy, or the eventual termination of her

employment.  *See Lawhead*, *7-8; *Pedreira*, 579 F.3d at 728; *Hall,* 215 F.3d at 627; *Keys*, 684 F.3d at 610.  The fact that Option Care granted Prida a religious exemption to the vaccine requirement demonstrates the *absence* of any animus or bias against Prida because of her religious beliefs.  It defies logic that Option Care would accommodate Prida's alleged religious beliefs as to the vaccine requirement, then turn around and discriminate against Prida for her alleged religious beliefs as to weekly testing.  Moreover, given the sheer volume and variety of Prida's stated grounds for objecting to testing, it is simply not plausible that Option Care would have somehow zeroed in on the purported religious aspects of her objections.

Although Prida alleges that her request for a religious exemption to the testing requirement was "processed in a retaliatory and discriminatory manner" (Am. Compl., Page ID # 98, ⁋ 37), there are no allegations in the Amended Complaint to support such conclusory allegation.  Option Care's testing requirement applied to all unvaccinated employees (except those working 100 percent remote), regardless of the reason for their unvaccinated status.  (*Id*., Page ID # 96-97, 102-03, ¶¶ 28, 31, 58).  See *Robertson v. McKesson Corp.,* No. 2:23-cv-2334 *18, 2023 U.S. Dist. LEXIS 141159 (S.D. Ohio August 11, 2023) (vaccination status is not a class to which Title VII protections apply).  Prida alleges that Option Care warned her on at least six occasions between February 25 and March 9, 2022 that her continued refusal to submit to testing would result in her termination.  (*Id*., Page ID # 100-104,

¶¶ 47, 49, 55, 56, 57, 59, 61, 63). The alleged warnings were an obvious effort by Option Care to induce Prida to take the steps necessary to *retain* her employment, not an effort to end it. None of the alleged warnings so much as mentioned Prida's religious beliefs or indicated discriminatory animus toward them. (*Id*.)

### 5. Recent Circuit Court Decisions Reversing District Court Dismissals Are Distinguishable From The Present Case.

This Court's recent decision in *Lucky v. Landmark Med. Of Mich., P.C.*, No. 23-2030, 2024 U.S. App. LEXIS 14257 *1-3 (6ᵗʰ Cir. June 12, 2024), reversing the district court's dismissal of the plaintiff's complaint alleging religious discrimination, is distinguishable from the present case. In *Lucky*, a prospective employer, Landmark, abruptly terminated a job interview when the plaintiff revealed that her religious beliefs precluded her from receiving a Covid-19 vaccination. Lucky alleged that Landmark declined to hire her and did not offer any accommodations. *Id*., at *2. In her complaint, Lucky alleged (1) she was a non-denominational Christian who seeks to make all decisions, including medical decisions, through prayer; (2) that the vaccine would defile her body, "because her body is a temple;" (3) she "prayed to God specifically about the COVID-19 vaccine;" and (4) God told her that "she would suffer spiritual harm if she received the COVID-19 vaccine." *Id*. at *1-4. This Court held these allegations were sufficient to plead an actionable religious discrimination claim. *Id*. at *4-5.

34

Although not noted in this Court's opinion, the district court's opinion reveals that Lucky also alleged that her "religious spirituality and faith in God, *not any secular non-religious beliefs*, are responsible for her refusal to receive the COVID-19 vaccine." See *Lucky,* No. 23-cv-11004, 2023 U.S. Dist. LEXIS 192507, *2-3 (E.D. Mich. Oct. 26, 2023) (emphasis added). Lucky also alleged that she advised the Landmark interviewer that her religious beliefs *precluded* the vaccination but urged that she "could have tested for COVID-19 daily." *Id*. at *3-4, n. 3.

The facts as pled in *Lucky* are materially different from the facts as pled in this case, and the differences call for a different outcome. In this case, unlike in *Lucky*, Prida was *granted* a religious accommodation to Option Care's Covid vaccination requirement on the condition that she submit to weekly testing. In contrast, Lucky's religious objection was only to the vaccine, she was not offered any type of accommodation, and she alleged she would have agreed to daily testing had it been offered. Prida sought an exemption from testing as well, and her stated grounds for such exemption request focused on harmful chemicals, medical concerns, scientific data, political considerations and lifestyle choices. Lucky specifically alleged only that her religious beliefs, prayers and faith in God, *not any secular nonreligious beliefs*, precluded her from having the vaccination. Prida, on the other hand, alleges that her secular concerns and her religion give her the right to choose whether or not to submit to Covid testing (i.e., they do not "preclude" the

35

testing). Prida does not allege that she prayed to God for guidance on the testing. For such reasons, the alleged facts in this case are distinguishable from the alleged facts in *Lucky*. Those differences support a conclusion that Prida has failed to plausibly plead an actionable case of religious discrimination/failure to accommodate.

On May 30, 2024, Prida's lawyers filed with this Court a "Notice of Additional Authority" citing the Eighth Circuit's recent decision in *Ringhofer v. Mayo Clinic, Ambulence*, No. 23-2994, 2024 U.S. App. LEXIS 12522 (8th Cir. May 24, 2024). (Notice of Additional Authority, RE 20). In *Ringhofer*, plaintiff Rubin alleged that the "Holy Spirit dwells within her" and "her body is a temple for the Holy Spirit," and she did not believe in "allowing testing of her body when it is not necessary." *Id.* *13. Plaintiff Ihde alleged that shifting her faith from her "Creator [Elohim] to medicine is the equivalent of committing idolatry – holding medicine in greater esteem then (sic) Elohim (Col 3:5)." *Id.*, *13-14. The appellate court found that these plaintiffs satisfied their burden at the pleading stage because they "connected their objections to specific religious principles." *Id.*

In addition to not being binding on this Court, the Eighth Circuit's decision in *Ringhofer* is distinguishable from the present case based on the factual allegations in the two cases. First, the Eighth Circuit found that the district court erred because it did not "consider the complaint as a whole" and instead focused on "specific parts

of the complaints." *Id*., *12.  Here, the District Court properly considered Prida's entire, unusually detailed Amended Complaint, along with Prida's email correspondence and voluminous affidavits, in coming to the conclusion that her objections to testing were based on "scientific and political factors, not religious belief."  (Mem. Opinion and Order, RE 16, Page ID # 235).  Second, there is no mention in the *Ringhofer* decision, or in the underlying district court decision, of Rubin or Ihde having pled the types of scientific, medical, political and personal lifestyle concerns that Prida has pled. Rather, the *Ringhofer* plaintiffs succinctly pled only that their specific religious beliefs were the reason for objecting to their employer's testing requirement.  Those plaintiffs, unlike Prida, did not allege that their religion gave them the right to choose whether or not to submit to testing. Instead, the *Ringhofer* plaintiffs alleged that their specific religious objections *prohibited* them from submitting to Covid testing.  Hence, their allegations, unlike Prida's, did not raise a concern about seeking "carte blanche" or a "blanket privilege" to avoid nearly any condition of their employment.  In short, the Eighth Circuit's decision in *Ringhofer* does not salvage the deficiencies in Prida's Amended Complaint.

**C.    Prida's Amended Complaint Fails To Plausibly Plead An Actionable Retaliation Claim.**

To plead an actionable Title VII retaliation claim, a plaintiff must plausibly allege that: (1) she engaged in an activity protected by Title VII that was known to the defendant; (2) the defendant took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse employment action. *Taylor v. Geithner*, 703 F. 3d 328, 336 (6th Cir. 2013); *Henry v. Abbott Labs*, 651 F.App'x 494, 504 (6th Cir. 2016). There are two categories of protected activity under Title VII: (1) participation in a proceeding with the EEOC, and (2) opposition to an apparent Title VII violation. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008); *Briggs v. Univ. of Detroit-Mercy*, 611 F.App'x 865, 871 (6th Cir. 2015) (*citing Wasek v. Arrow Energy Servs, Inc.*, 682 F. 3d 463, 469 (6th Cir. 2012) and 42 U.S.C. Sec. 2000e-3(a)). Protected opposition activity requires that a plaintiff make an overt stand against suspected illegal activity, as vague charges of discrimination do not invoke the protection of Title VII. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989). A complaint that mixes vague charges of discrimination with generalized management grievances is not protected conduct where it is clear that the plaintiff is really contesting management practices. *Id.*

### 1.   Prida Does Not Plausibly Allege She Engaged In Protected Activity Under Title VII.

In the Amended Complaint, Prida does not allege that she opposed a perceived Title VII violation.  Rather, Prida alleges that her "protected activity" consisted of her protest of a perceived violation of the Health Insurance Portability and Accountability Act ("HIPAA") and Option Care's "unlawful weekly covid testing policies in violation of her sincerely held religious beliefs."  (Am. Compl. RE 10, Page ID # 105, ¶¶ 77-78).  Prida protested the legality of the testing policy on one occasion, March 1, 2022, but at the time made no reference to Title VII or discrimination. (Am. Compl. RE 10, Page ID # 101, ¶ 51).  Rather, on that occasion, and on several other occasions, Prida protested an alleged violation of her "privacy rights" under HIPAA. (*Id.*, Page ID # 94, 101-102, 105, ¶¶ 18, 51, 53-54, 77). Protesting an alleged HIPAA violation does not constitute protected activity under Title VII, which prohibits only retaliation for opposition to practices made or reasonably believed to be unlawful under Title VII.  *Holden v. Owens-Illinois, Inc.*, 793 F.2d 745, 748-49 (6th Cir. 1986).   Furthermore, requesting a religious accommodation does not constitute protected "opposition" conduct under Title VII. *Stanley v. Express Jet Airlines, Inc.,* 808 F.App'x 351, 358 (6th Cir. 2020).  Prida's alleged protest of Option Care's testing requirement as "unlawful," without

mentioning Title VII, disparate treatment or discrimination, is too vague to constitute protected activity under Title VII. *See Booker, supra*.

Prida's conclusory legal allegations in paragraphs 77 and 78 of the Amended Complaint are incongruous with the factual allegations in the section of the Amended Complaint headed, "**Plaintiff's Accommodation Requests and Defendants' Responses**." (Am. Compl. RE 10, Page ID # 98-104, ¶¶ 40-63). Those allegations reveal that Prida was not protesting the lawfulness of Option Care's weekly testing requirement, rather, she was seeking an accommodation of her own alleged religious beliefs – exemption from testing. (*Id.*, Page ID # 100-103, ¶¶ 44-49, 55, 57-61). Again, seeking an accommodation is not protected conduct under Title VII. *Stanley, supra.* There is no indication that Option Care understood Prida's repeated requests for an exemption from testing based on various and sundry objections to be a form of opposition to perceived employment discrimination. (*Id.*)

In her Opposition Brief filed in the District Court and in her Appellant's Brief filed in this Court, Prida argues that sending her notarized affidavits to Option Care officials on March 1 and 2, 2022 constituted "protected activity." (Opp. Br., RE 14, Page ID # 187-188; Prida's Appellant's Br., RE 19, Page ID # 55). In the Amended Complaint, however, Prida makes no mention of the affidavits in any of her allegations regarding events and communications leading up to her termination. (Am. Compl. RE 10, Page ID # 103-104, ¶¶ 59-63). Indeed, Prida makes no mention

of the affidavits in *any* of the allegations comprising her retaliation claim in Count II.  (*Id.*, Page ID # 105-106, ¶¶ 76-82).  If Prida believed the notarized affidavits, and the few, unexplained references to Title VII buried within that lengthy document, constituted protected activity and motivated Option Care to terminate her employment, then surely she would have alleged this in the Amended Complaint.

### 2.    Prida Does Not Plausibly Allege A Causal Connection Between Protected Activity And Her Termination.

Even if Prida's alleged request for a religious accommodation, alleged protestations about the Covid testing and/or her submission of affidavits were deemed to constitute protected activity for purposes of Title VII, Count II of the Amended Complaint would still be subject to dismissal because Prida does not plausibly allege the requisite causal connection between her purported protected activity and the termination of her employment. Prida alleges that on February 25, 2022, two different Option Care managers told her, orally and via email, that noncompliance with the Covid testing program would result in termination.  (*Id.*, Page ID # 100-101, ¶¶ 47, 49).  Prida first submitted her affidavits on March 1, 2022, *four days after receiving this ultimatum from two different sources.* (Am. Compl. RE 10, Page ID # 101, ¶ 51; Opp. Br., RE 14, Page ID # 187). In fact, in the affidavits themselves, Prida acknowledges that she had previously been told that her failure to submit to Covid testing would result in her termination.  (*See* Exhibit 1 to Plaintiff's

Brief in Opposition to Option Care's Motion to Dismiss Am. Compl., RE 14-1, Page ID #193, Item 6; Page ID #208). The decision to terminate Prida for noncompliance with the testing policy had already been made by the time Prida submitted her affidavits. Therefore, it is not plausible that Prida was terminated in retaliation for submitting the affidavits (i.e., there was no causal connection). *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("[P]roceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."); *see also*, *Haydar v. Amazon Corp.*, LLC, No. 19-2410, 2021 U.S. App. LEXIS 28182, *17 (6th Cir. 2021) (same).

In the Amended Complaint, Prida alleges that Option Care warned her *on at least six occasions* that her failure to comply with the Covid testing program would result in her termination. (Am. Compl. Page ID # 100-103, ¶¶ 47, 49, 55, 57, 59, 61). The topic of Prida's religious beliefs, or her alleged protest about the supposed "unlawfulness" of testing, did not come up in any of those alleged warnings. (*Id.*) When Prida appeared for work on March 9, 2022 and revealed that she had not been tested for Covid, her employment was terminated for that reason, just as she had been warned would happen. (*Id.*, Page ID # 92, 103-104, ¶¶ 3, 63). The Amended Complaint on its face shows that Option Care terminated Prida's employment because she did not submit to weekly testing, not because she supposedly engaged in protected activity. Furthermore, it is implausible for Prida to contend that Option

Care retaliated or otherwise discriminated against her for requesting a second (or broader) religious accommodation after having already granted her a religious exemption to the vaccine requirement.

### 3.    Prida Failed to Exhaust Administrative Remedies As To Her Retaliation Claim.

In dismissing Prida's retaliation claim, the District Court did not address Prida's failure to exhaust administrative remedies as to such claim.  Prida's failure in this regard constitutes an independent ground for dismissing Count II of the Amended Complaint.  Under Title VII, before filing a complaint in federal court, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC and obtaining a right-to-sue letter.  42 U.S.C. §§ 2000e-5(e)-(f); *see also Hunter v. Sec'y of United States Army*, 565 F.3d 986, 993 (6th Cir. 2009).  A Title VII plaintiff's failure to exhaust mandatory administrative remedies prior to filing a claim in federal court renders such claim subject to dismissal pursuant to Rule 12(b)(6).  *Lockett v. Potter*, 259 Fed. Appx. 784, 786 (6th Cir. 2008); *Granderson v. Univ. of Mich.*, 211 Fed. Appx. 398, 400 (6th Cir. 2006).

Prida alleges that she timely filed an EEOC charge "raising the issues in this Complaint." (Am. Compl., RE 10, Page ID # 104, ¶¶ 64-65).[4]  In fact, on or about

---

[4] As the District Court noted, Prida filed her EEOC charge on July 28, 2022, over four months after she was terminated by Option Care for failure to comply with the Covid testing policy.  As such, Prida's filing of her EEOC charge was not protected

July 28, 2022, Prida filed EEOC Charge No. 532-2022-01830 alleging *only* discrimination based on religion. (*See* Exhibit 3 attached to Option Care's Motion to Dismiss Am. Compl., RE 12-3, Page ID # 146-47).  In her narrative of particulars on the Charge, Prida alleges some of the facts alleged in her Amended Complaint and concludes: "I believe I have been discriminated against because of my religion . . . in violation of Title VII of the Civil Rights Act of 1964, as amended."  (*Id.*) Prida's Charge does not mention retaliation, protected activity, a causal connection or any other facts that would indicate she was advancing a retaliation claim.  (*Id.*)

Courts in the Sixth Circuit look to the charges the plaintiff explicitly files and to the alleged facts the plaintiff includes on the form or in any accompanying documents.  *Benzaoual v. Ohiohealth Corp.*, No. 2:19-cv-3366, 2021 U.S. Dist. LEXIS 123015, *24-25 (S.D. Ohio July 1, 2021); *Thompson v. Sec'y of the VA,* No. 1:18cv1777, 2019 U.S. Dist. LEXIS 208994, *7 (N.D. Ohio June 10, 2019); *Younis v. Pinnacle Airlines, Inc.,* 610 F.3d 359, 361 (6th Cir. 2010).  Having failed to include a retaliation claim or factual allegations to support such claim in her EEOC Charge, Prida has failed to exhaust mandatory administrative remedies relative to Count II, and such count should be dismissed for this reason as well.

---

activity under Title VII's participation clause. (Mem. Opinion and Order, RE 16, Page ID #13).

**D.    The District Court Properly Dismissed Count III Of Prida's Amended Complaint.**

Finally, Prida's argument that the District Court erred by dismissing her O.R.C. §4112.02 claim *sua sponte* on "grounds not raised by Defendants" is baseless.    First, the District Court dismissed Count III of Prida's Amended Complaint under Ohio law for the same reasons, and based on the same analysis and case law, that it dismissed Count I under Title VII (failure to plead facts sufficient to show that she is a member of a protected class as it relates to her claims of religious discrimination).  (Mem. Opinion and Order, RE 16, Page ID #240-243).  The District Court also based dismissal of Count III on the fact that Prida failed to plead facts sufficient to show she was replaced by or treated less favorably that a person outside of her protected class, which are essential elements of a disparate treatment religious discrimination claim.  (*Id*.).    Defendants did move for dismissal of the O.R.C. §4112.02 on those grounds, so the District Court did not act *sua sponte*.  (See Option Care's Motion to Dismiss Am. Compl., RE 12, Page ID #133; Option Care's Reply Brief in Support of Its Motion to Dismiss Am. Compl., RE 15, Page ID #214, 220 and footnote 1).    Moreover, given that Prida admitted to the District Court, and admits to this Court, that she is asserting only a failure to accommodate claim of religious discrimination, *not* a disparate treatment claim, her argument pertaining to the District Court's dismissal of Count III of the Amended Complaint is moot. (See

Prida's Brief in Opposition to Option Care's Motion to Dismiss Am. Compl., RE 14, Page ID #177 (Prida states that disparate treatment is "a separate and distinct cause of action under Title VII not pled in the Amended Complaint.")).

## IV.  CONCLUSION

For each and all of the foregoing reasons, Option Care respectfully submits that this Court should affirm the District Court's Order granting Option Care's Civil Rule 12(b)(6) motion and dismissing all of Prida's claims, with prejudice.

Respectfully submitted,

**JACKSON LEWIS P.C**.

*/s/ Jeffrey B. Keiper*
Jeffrey B. Keiper (0063133)
Julia Denmeade (0101159)
6100 Oak Tree Blvd, Suite 400
Cleveland, OH 44131
(216) 750-0404 / Fax (216) 750-0826
Jeffrey.Keiper@JacksonLewis.com
Julia.Denmeade@JacksonLewis.com

*Attorneys for Defendants-Appellees*
*Option Care Enterprises, Inc. and*
*Clinical Specialties, Inc.*

46

## CERTIFICATE OF COMPLIANCE

I hereby certify under Fed. R. App. P. 32(g) that this Brief contains 11,339 words, excluding its Cover, Corporate Disclosure, Table of Contents, Table of Authorities, Statement in Support of Oral Argument, Certificate of Compliance, Certificate of Service, and Addendum. An Addendum has been attached to the foregoing Brief including a Designation of record in Compliance with 6 Cir. R. 28(b)(1)(A)(i).

*/s/ Jeffrey B. Keiper*
Jeffrey B. Keiper (0063133)

47

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the above was electronically filed on June 17, 2024, with the Court's CM/ECF system and this system will send electronic notice to all parties of record.

*/s/ Jeffrey B. Keiper*
Jeffrey B. Keiper (0063133)

## APPELLEE'S ADDENDUM
## DESIGNATION OF THE RECORD

| Record Entry Number | Description | Date filed | Page ID Range |
|---|---|---|---|
| 1 | Complaint (Jury Demand Endorsed Hereon) | 05/02/2023 | 1 - 16 |
| 6<br>6-1 | Option Care's Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6), Exhibit A | 06/30/2023 | 43 - 71 |
| 7 | Option Care's Answer to Complaint and Affirmative Defenses to Plaintiff's Complaint | 06/30/2023 | 72 - 88 |
| 10 | Amended Complaint (Jury Demand Endorsed Hereon) | 07/21/2023 | 91 - 107 |
| 11 | Plaintiff's Brief in Opposition to Option Care's Motion to Dismiss | 07/28/2023 | 108 – 110 |
| 12<br>12-1<br>12-2<br>12-3 | Option Care's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Civil Rule 12(b)(6), Exhibits 1-3 | 08/04/2023 | 111 - 147 |
| 13 | Option Care's Answer and Affirmative Defenses to Plaintiff's Amended Complaint | 08/04/2023 | 148 - 165 |
| 14<br>14-1 | Brief in Opposition to Option Care's Motion to Dismiss Amended Complaint and Exhibit 1 | 09/05/2023 | 166 - 210 |
| 15 | Option Care's Reply Brief in Support of Their Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Civil Rule 12(b)(6) | 09/19/2023 | 211 - 224 |
| 16 | Memorandum Opinion and Order granting Option Care's Motion to Dismiss Plaintiff's Amended Complaint | 10/24/2023 | 225 - 243 |
| 17 | Judgment Entry – Option Care's Motion to Dismiss Plaintiff's Amended Complaint is Granted | 10/24/2023 | 244 |
| 18 | Notice of Appeal | 11/20/2023 | 245 - 246 |

4873-3697-4017, v. 1

49